FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 17  AM 4: 07

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DAVE FOLSE, JR.                                    CIVIL ACTION

VERSUS                                             NO. 05-0150

JO ANNE B. BARNHART,                               SECTION "N"(3)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

The plaintiff, Dave Folse, Jr., seeks judicial review of an adverse decision of the Defendant,

Jo Anne B. Barnhart, Commissioner of Social Security, denying his application for supplemental

security income and disability benefits. The United States District Judge, pursuant to 28 U.S.C.

§ 636(b), referred this case to the United States Magistrate Judge for report and recommendation.

Both Folse and the Commissioner filed cross motions for summary judgment and Folse filed a

Reply Brief. After reviewing the administrative record, pleadings, and arguments of both parties,

the undersigned recommends that the District Judge VACATE the Commissioner's final decision

and REMAND this case for further proceedings.

### I. STATEMENT OF THE CASE

#### A. Course of Administrative Proceedings

Folse applied for supplemental security income and disability benefits on August 11,

2003 and July 24, 2003, respectively.  Plaintiff claimed the disability onset date of April 9, 2003

due to ruptured discs, shattered vertebrae, diabetes, heart murmur, back/leg pain and bladder

___ Fee _____
___ Process _____
_X_ Dktd _____
_✓_ CtRmDep _____
___ Doc. No. _____

control problems.[1]  Plaintiff's application for benefits was denied and he timely filed a request

for a hearing before an administrative law judge (ALJ).[2]

On May 27, 2004, ALJ Gary L. Vanderhoof conducted an oral hearing.[3]  Folse was

represented at the hearing and testified.[4]  A vocational expert was neither present nor consulted.

In an opinion dated July 16, 2004, the ALJ found that the claimant met the non-disability

requirements set forth in Section 216(I) of the Act and was insured for benefits through

December 31, 2001.[5]  The ALJ further found that Folse's degenerative disc disease, heart

murmur and diabetes are considered "severe" based upon the requirements set forth in the

regulations.[6]

At step three, the ALJ determined that the plaintiff's impairments  were not severe

enough to meet or medically equal the impairments listed in Appendix 1, Subpart P, Regulations

No. 4.  The ALJ specifically noted that the claimant does not have the limitation of motion or

the laboratory studies required to meet the severity requirements of sections 1.00, 4.00 and 9.08

---

[1]See Application for Disability Insurance Benefits [Adm. Rec. 37-43]; Application for
Supplemental Security Income Benefits dated August 11, 2003 [Adm. Rec. 262-264]; Adult
Disability Report dated August 1, 2003 [Adm. Rec. 43-66].

[2]See Disability Determination dated October 8, 2003 [Adm. Rec. 25-29]; Disability
Determination and Transmittal dated October 2, 2003 [Adm. Rec. 265]; Request for Hearing by
Administrative Law Judge [Adm. Rec. 30]; Claimant's Statement When Request for Hearing Is
Filed (noting that he had back surgery on September 24, 2003, his back and heart condition has
gotten worse and that eye surgery is scheduled for November 11, 2003) [Adm. Rec. 59-61].

[3]See Transcript of May 27, 2004 Hearing [Adm. Rec. 326-348].

[4]Id.

[5]See Decision of ALJ Gary L. Vanderhoof dated July 16, 2004 [Adm. at 10-18]

[6]Id. [Adm. Rec. 15, 17].

of the Listings.[7]

Regarding the plaintiff's heart murmur, ALJ Vanderhoof noted that the condition was mild. He further observed that plaintiff's diabetes was controlled with medication and that there was no end organ damage or limitations caused by the disease. The ALJ also found that Folse has the residual functional capacity to perform "substantially all of the full range of light work," which is not compromised by any non-exertional limitations.[8] Accordingly, utilizing Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 as a framework, the ALJ determined that Folse is not disabled.[9] In summary, ALJ Vanderhoof denied disability and supplemental income benefits, finding that Folse was capable of performing a full range of light work by applying the Medical Vocational Guidelines and thus not under a "disability" at any time through the date of decision.[10]

### B. Statement of Facts

Folse, a forty-eight year old male with a twelfth grade education, testified that on April 9, 2003, he sustained injury to his back, resulting from a work-related accident. [Adm. Rec. 330, 334]. At the time of the accident, plaintiff was being picked up by a crane in a personnel basket, which hit the deck and the pipe handrail on a supply boat, injuring plaintiff's back and legs.[11]

---

[7]See Decision of ALJ Gary L. Vanderhoof dated July 16, 2004 [Adm. Rec. 15].

[8]Id. [Adm. Rec. 18].

[9]Id. [Adm. Rec. 18].

[10]Id. [Adm. Rec. 10-18].

[11]See Transcript of Hearing Testimony [Adm. Rec. 334]; Patient History Questionnaire dated July 14, 2003 [Adm. Rec. 196].

An MRI of the lumbar spine dated April 28, 2003 revealed the following findings, to wit:

There is dessication of the L203, L4-5 and L5-S1 disc spaces.
There is mild posterior osteophytic ridging at L2-3 with ventral impression on the thecal sac.  No spinal stenosis is noted.
There is mild disc bulge at L3-4 without evidence of spinal stenosis,   There is minimal narrowing at the left neural foramen at this level.  There is a left paracentral disc bulging at L4-5 with resultant mild spinal stenosis.  There is also mild narrowing of the left neural foramen at this level.  At L5-S1, there is diffuse dorsal disc bulging with mild spinal stenosis and mild to moderate narrowing at the left neural foramen at this level.
Configuration of the spinal canal is normal.  Bone marrow signal is unremarkable.
IMPRESSION:
1.      Multilevel Degenerative Disc Disease as Described Above.
2.      Mild Left Paracentral Disc Bulging at L4-5 and Diffuse Dorsal Disc
        Bulging at L5-S1 with Resultant Mild Spinal Stenosis and Neural
        Foraminal Narrowing of the Left. [12]

On September 24, 2003, Dr. Stefan  G. Pribil performed back surgery, *i.e.*, a posterior lumbar interbody fusion at L4-5 and L5-S1 with two cages, screws and artificial bone.[13]  The purpose of the surgery was to decompress and stabilize plaintiff's lumbar spine.

Plaintiff had previously worked as a deckhand and a boat captain for years prior to his accident.   Plaintiff testified that Dr. Pribil advised him to do nothing other than walk (*i.e.*, no lifting, bending, squatting, etc.).   At the time of the hearing, the ALJ was further advised that Dr. Pribil had scheduled the plaintiff for a functional capacity examination within a week.

An echocardiaogram performed on September 24, 2003 revealed that the right atrium and

_____

[12]*See* Lady of the Sea General Hospital, Radiology Imaging Department, MRI Report dated April 28, 2003 [Adm. Rec. 167].

[13]*See* Transcript of Hearing Testimony [Adm. Rec. 334-335]; Report of Dr. Stefan G. Pribil dated July 17, 2003 (diagnosing high blood pressure, obesity, significant disc herniation at L4-5 and a Grade I spondylolisthesis at the L5-S1 level) [Adm. Rec. 188-189]; Operative Report dated September 24, 2003 (diagnosing lumbar stenosis, lumbar disc herniation, lumbar claudication at L4-5 and L5-S1, and lumbar spondylolisthesis, Grade I, at L4-5 and L5-S1) [Adm. Rec. 215].

4

ventricle were normal in size with normal systolic function. It further showed the left atrium at the upper limits of normal to mildly enlarged and the left ventricle was normal with no wall motion abnormalities and normal systolic function.[14] Chest X-ray results of September 23, 2003 were also within normal limits.[15]

Dr. Pribil's reports following surgery indicate that the plaintiff's condition had improved. Dr. Pribil's report dated October 9, 2003 notes that the plaintiff had a "fairly dramatic long recovery in that he was in ICU for a little bit when he became fluid overloaded and had difficulty with his kidneys and lungs;" however, "he was tuned up and eventually went home doing great."[16]

Dr. Pribil's Clinic Notes dated November 6, 2003 state:

Mr. Folse comes in status post lumbar instrumentation fusion at L4-5 and L5-S1. Postoperatively he had some fluid but did extremely well. Mr. Folse had bilateral L4-5 and L5S1 via Wiltse approach decompression at [both levels] with Polar placed cages. He is doing great. He had bilateral pars intermedia at L4-5 and L5-S1. His incisions are well-healed.
ASSESSMENT: He is to follow up with me in three months.[17]

Eight months post-surgery Dr. Pribil reported:

Mr. Folse comes in eight months status post lumbar instrumented fusion at L4-5 and L5-S1. He is doing well using a cane, however, he has no pain in the legs but some pain and discomfort in the low back. He has more good days than bad days. Overall, he is gratified and does not take any pain medications. His diabetes is under control. Unfortunately he has gained 20 plus pounds and is quite heavy right now.

---

[14]*See* Echocardiogram Study [Adm. Rec. 220].

[15]*See* Chest X-Ray PA/Lateral Views [Adm. Rec. 223].

[16]Follow-up Report of Dr. Stefan Pribil dated October 9, 2003 [Adm. Rec. 251].

[17]*See* Dr. Stefan Pribil's Report dated November 6, 2003 [Adm. Rec. 246].

EXAMINATION:  On exam today, he walks on his toes and heels.  He has trouble squatting.  Knee jerks are 1+, ankle jerks are trace to 1 and symmetric.  Strength in EHL and ankle dorsiflexors is good.
RADIOLOGIC REVIEW:  X-rays today show good fusion in place progressing nicely.
ASSESSMENT:  The  patient feels good and I have advised him to lose weight by cutting out starches.  Follow up with me in three months at which time he should be at MMI.[18]

Terrebonne General Medical Center's radiology report regarding the lumbar spine dated

May 4, 2004 noted:

Patient is postop dorsal fusion of the lower two lumbar levels.  Posterior struts and pedicle screws were noted in place in good position.  Good bony alignment was maintained.  There are degenerative changes consisting of anterior vertebral osteophytes really at all of the lumbar levels most pronounced at L2-3.[19]

The radiologists impression was: "1. Previous dorsal fusion at L4-5 and L5-S1 levels with no

unusual postoperative findings.  2. Degenerative changes most pronounced at L2-3."[20]

The Commissioner does not contest that the plaintiff's medical records evidence other

impairments noted by plaintiff but not discussed by the ALJ, including morbid obesity,[21] micro

---

[18]See Dr. Stefan Pribil's Report dated May 13, 2004 [Adm. Rec. 269].

[19]Radiology Report dated May 4, 2004 [Adm. Rec. 273].

[20]Id.

[21]Morbid Obesity is defined as pathologic or unhealthy increase in body weight due to the accumulation of fat.  See Blakiston's Gould Medical Dictionary at pp. 860, 931 (4th ed.).

albuminuria,[22] diabetic nephropathy,[23] peripheral edema,[24] renal insufficiency,[25] hypertension

(high blood pressure) and cardiovascular disease (heart/circulatory disease).[26]  The

Commissioner's position regarding the aforesaid medical evidence is that "[t]he ALJ was not

required to consider [these] other impairments reflected in the medical evidence ... because they

were not alleged on plaintiff's disability report as illness, injuries, or conditions that limit his

ability to work."[27]  The Commissioner further argued that "the ALJ, according to Fifth Circuit

precedent, did not have the duty to investigate them."[28]

     Although the defendant suggests that there is sufficient consideration of the combined

---

[22]Micro Albuminuria is defined as the presence of small quantities of albumin in the urine which may or may not be associated with renal parenchymal disease. *See Blakiston's* Gould Medical Dictionary at pp. 45, 840.

[23]Diabetic Nephropathy is defined as kidney disease secondary to diabetes. *See Blakiston's* Gould Medical Dictionary at pp. 381, 898.

[24]Peripheral Edema refers to the accumulation of fluid in the extremities. *See Dorland's* Illustrated Medical Dictionary at p. 1094 (26th Ed.1981).

[25]Renal Insufficiency refers to either chronic or acute measurable quantitative reduction in kidney function. *See Blakiston's* Gould Medical Dictionary at p. 1180.

[26]Louisiana Kidney Care Records (diagnosing hypertension, peripheral edema, micro albuminuria secondary to diabetes, diabetic nephropathy and renal insufficiency) [Adm. Rec. 277-278]; St Anne Medical Group Records (diagnosing micro albuminuria, renal insufficiency, edema, obesity and hyperlipidemia (excessive fatty substances in blood) )[Adm. Rec. 281, 282, 284, 285]. *See also* Dr. Wong's Summary List of Diagnoses and Conditions (noting non-insulin dependent diabetes mellitus, hypertension, retinopathy (i.e., morbid condition of the retina), gastro-esophageal reflux disease, ankylosing spondylitis, L4-5 disc protrusion, hyperlipidemia, and micro albuminuria) [Adm. Rec. 290]; Cardiovascular Institute of the South Records/Nuclear Perfusion Study (noting possible coronary artery disease, hypertension, dyslipidemia, diabetes mellitis, obesity, multiple back surgeries and cardiovascular disease) [Adm. Rec. 294, 295].

[27]Commissioner's Memorandum in Support of Cross-Motion for Summary Judgment at pp. 8-9 (citing Plaintiff's Disability Adult Status Report [Adm. Rec. 44]).

[28]*Id.* at p. 9.

effects of the plaintiff's impairments when each is separately discussed in the ALJ's decision, this Court's review of the ALJ decision reveals no discussion of other impairments (*i.e.*, morbid obesity, micro albuminuria, diabetic nephropathy, peripheral edema and renal insufficiency) either in the body or findings of the ALJ's decision.  Regarding plaintiff's diabetic condition, the ALJ simply states that the plaintiff's diabetes is controlled with medication and that he has no end organ damage or limitations caused by the disease.[29]  A review of the record, however, does reflect that plaintiff's obesity was problematic and for that reason he was placed on an 1800 calorie a day diabetic diet in an attempt to get better control over his blood sugar level.[30]

Folse testified consistently with his medical records that he had back surgery (*i.e.*, fusion by placement of two cages at two separate levels) in September of 2003.  Folse admitted that the surgery alleviated a lot of his pain and solved his bladder problem.[31] Nevertheless, plaintiff testified that he walks with a cane and can do nothing around the house.  He testified that his wife helps him get dressed in the morning and that he is only capable of light grocery shopping. Folse stated that he can only walk for a half of a block and that he can drive for about ten miles. Plaintiff testified that he must constantly change positions between standing, sitting and lying down and can lift no more weight than a pitcher of water.  He occasionally visits his mother and his best friend, who both live close to plaintiff's house.[32]

---

[29]*See* ALJ Vanderhoof's Decision [Adm. Rec. 15].

[30]*See* Dr. Nawaz's Note dated July 26, 2004 [Adm. Rec. 287]

[31]*See* Transcript of Hearing  [Adm. Rec. 336].

[32]*Id.* [Adm. Rec. 335-341].

Addressing his diabetes, plaintiff testified that he had problems with his eyes (blood vessels leak), numbness in his feet and edema/swelling in his legs. Plaintiff further testified that Dr. Melado diagnosed a kidney obstruction and plans to refer the plaintiff to a urologist.

Turning to his back problems, plaintiff testified that Dr. Pribil told him not to try to do anything but walk. Folse noted that he walks everyday but that it hurts. He further indicated that he needed to lose more weight and that Dr. Pribil scheduled the plaintiff for a functional capacity evaluation.

Plaintiff initially attended his functional capacity evaluation on June 4, 2004 (i.e., a week after the hearing), as directed by Dr. Pribil; however, Folse was referred to be cleared by a cardiologist due to cardiac concerns. On August 27, 2004, a functional capacity exam was performed on the plaintiff by Trevor Bardarson, a Board Certified Orthopedic Specialist and Certified Functional Capacity Evaluator.[33] Bardarson summarized his findings as follows:

> A comprehensive neuromusculoskeletal examination found the following key clinical findings.
> 1). Patient ambulated with a wide based mildly ataxic gait with the use of a cane.
> 2). Poor balance noted. Unprotected height should be avoided.
> 3). Lumbar ROM testing revealed flexion to be 50% limited, extension to be 80% limited, left lateral flexion to be 40% limited, right lateral flexion to be 60% limited and straight leg raising to be normal to 80% bilaterally.
> 4). Deep tendon reflexes were 2+ bilateral knees and absent bilaterally.
> 5). Bilateral shoulder ROM was 15% limited grossly with complaints of pain.
> 6). Morbid obesity with generalized deconditioning.
>           \*   \*   \*
> The validity of this FCE was objectively assessed by analyzing physiological signs, identification of organic versus non-organic signs, cross-referencing consistency of efforts, cross-referencing biomechanical patterns and cross referencing functional tests for signs of maximal or submaximal effort. Physiologic signs found during this examination supported the nature of

---

[33]See WorkSaver Functional Capacity Evaluation Synopsis and Report dated August 27, 2004 [Adm. Rec. 303].

subjective complaints reported by this client indicating an organic basis for impairments and any resulting disability.  Tests for non-organic signs and submaximal effort were negative for significant symptom and/or disability magnification behaviors.  Therefore, the results of this FCE were accepted by the evaluator as being reliable and valid, indicating there is confidence that the client gave consistent and reasonably good effort.  Consequently, the results of this FCE were accepted to accurately estimate the residual functional capacities.

Estimated Residual Functional Capacity

Functional capacity tests addressing static/dynamic postural tolerances and material handling capacities were completed.  The results of this FCE <u>estimate</u> that the patient should be able to safely perform work based on an eight (8) hour work day consisting of job tasks classified in the physical demand level (PDL) of **sedentary** as defined in the Dictionary of Occupational Titles, 4th Ed.  (U. S. Dept. of Labor) with the following restrictions;

1). Occasional lifting of up to 10 pounds (20 pounds if positioned conveniently).
2). Avoid frequent lifting.
3). Occasional carrying of up to 10 pounds.
4). Avoid sustained or repetitive trunk flexion.
5). Limit stairs to rare and avoid ladders.
6). Avoid unprotected heights.
[7).] Please see page #5 for all estimated residual abilities.

**Based on these findings it is determined that the client was unable to demonstrate sufficient residual functional capacities to safely return to his work as a Captain [medium level physical exertion].  Comparison of his demonstrated residual capacities to the demands of any proposed should be used for return to work consideration at this time.**[34]

## II. STANDARD OF REVIEW

A review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). "The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5 th Cir.2000). The claimant has the burden of proving that she has a medically

---

[34]*Id.* [Adm. Rec. 302-303].

determinable physical or mental impairment lasting at least 12 months that prevents her from engaging in substantial gainful activity, which is defined as work activity involving significant physical or mental abilities for pay or profit. *Id.*

To determine disability, the Commissioner has promulgated a five-step sequential process for hearing officers to follow. 20 C.F.R. § 404.1520; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5 th Cir.1994), *cert. denied*, 514 U.S. 1120 (1995). The hearing officer decides whether: (1) the claimant is presently engaging in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment is listed, or equivalent to an impairment listed, in appendix I of the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing any other substantial gainful activity. *Leggett v. Chater*, 67 F.3d 558, 563 n. 2 (5 th Cir.1995). The claimant has the burden on the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If the claimant meets that burden on steps one, two, and three, then she is disabled. If the claimant does not meet her burden on step three but does on step four, then, on the fifth step, the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5 th Cir.1984).

### III. POINTS OF ERROR

Plaintiff challenges the Commissioner's decision on several grounds. Plaintiff alleges that ALJ Vanderhoof did not consider certain diagnosed physical impairments at Step 2 (*i.e.*, Obesity, Micro albuminuria, Diabetic Nephropathy, Peripheral Edema, Renal Insufficiency, Hypertension and Cardiovascular Disease), which plaintiff submits are, alone and in combination, more than "slight" abnormalities, having more than a "minimal" effect on his

ability to perform sustained, gainful activity.[35]  Specifically, plaintiff highlights that the ALJ

referred only to the literal terms of 20 C.F.R. § 404.1520(c) and did not mention the standard as

required under *Stone v. Heckler,* 752 F.2dd 1099 (5th Cir. 1985).[36]  Additionally, the ALJ did not

consider the effect, if any, of the plaintiff's obesity at Step 3, which plaintiff argues is required by

the regulations.[37]  Plaintiff further contends that the ALJ's RFC assessment (i.e., that plaintiff is

capable of performing *substantially all* of the requirements of *light* work), is not supported by

*any* medical evidence.  Additionally, plaintiff contends that there is substantial evidence

contradicting the ALJ's findings, *i.e.*, the Functional Capacity Evaluation performed on August

27, 2004, which was provided to the Appeals Council and estimates that Folse should be able to

perform only *sedentary* level work with additional significant exertional *and nonexertional*

restrictions.  Accordingly, plaintiff further contends that the ALJ further erred in applying the

Medical-Vocational Guidelines (the "Grids") to determine that Folse was not disabled and, at a

minimum, should have enlisted the assistance of a vocational expert.

   In summary, the plaintiff's position is that the ALJ failed to apply the proper legal

standards, failed to consider *all of* Folse's medically determined impairments at Step 2 and 3,

which in turn skewed the residual functional capacity assessment; thus, it is allegedly not

supported by substantial evidence.

----

   [35]*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 4
(citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and *Loza v. Apfel*, 219 F.3d 378 (5th Cir.
2000)).

   [36]*See id.* at p. 3 (*citing Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000).

   [37]*Id.* at p. 5 (noting that the regulations state that obesity may be a factor in both "meets"
and "equals" determinations in that obesity itself may, by itself or in combination with multiple
impairments, be  considered medically equivalent to a listed impairment).

## IV. ANALYSIS

Because the ALJ dismissed numerous "other impairments" more specifically referred to hereinabove as *non-severe* at Step Two, he failed to include these impairments and/or any attendant limitations in his RFC analysis.  Essentially, plaintiff contends that the ALJ's analysis went awry at Step Two, which inappropriately skewed the analysis which  followed at Steps Three and Five,[38]  and thus, the finding of "no disability" is contrary to the substantial evidence presented.  For the following reasons, this Court agrees and thus the Commissioner's decision is not supported by substantial evidence.

### A. Non-Severity

As explained below, the ALJ erred because he failed at the outset to use the proper severity standard as construed by the Fifth Circuit in *Stone v. Heckler*.[39]   In *Stone*, the Court was confronted with a series of cases in which the ALJ made a finding against disability at step two of the sequential evaluation process by using a literal application of the Secretary's "severity" or "significant limitation" regulation.[40]   Significantly, the Court pointed out that the Fifth Circuit had construed the regulation as setting the following standard in determining whether a

---

[38]*See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520 and  404.1561.

[39]752 F.2d 1099 (5th Cir.1985).

[40]The regulation has not changed since the Fifth Circuit's consideration in *Stone* in 1985 except for the addition of the phrase "or combination of impairments," and reads:
> (c) You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment. 20 C.F.R. § 404.1520(c).

claimant's impairment was severe: "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[41]  The Court further explained that a literal application of the regulation would be inconsistent with the Act and its legislative history.[42]   The Court recognized that "it is impermissible to conduct the evaluation in such a manner as to deny benefits to individuals who are in fact unable to perform 'substantial gainful activity.'"[43]

Importantly, the Court, in censuring misuse of the severity regulation, forewarned that they would "assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* ] opinion or another of the same effect, or by an express statement that the construction the [Fifth Circuit] give[s] to 20 C.F.R. § 404.1520(c) is used."[44]  In the instant case, it is undisputed that the ALJ failed to cite to *Stone* or the *Stone* standard. However, this case was adjudicated at step five of the sequential evaluation process. Therefore, plaintiff must establish that the ALJ's failure to cite *Stone* constituted prejudicial error.

The critical administrative finding in this case is the Step 2 determination that plaintiff's evidence was insufficient to demonstrate more than the following "severe" impairments, to wit:

---

[41]*Stone*, 752 F.2d at 1101 (*quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).

[42]*Id.* at 1104-05.

[43]*Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir.1992) (*quoting Stone*, 752, F.2d at 1103).

[44]*Stone*, 752 F.2d at 1106; and *Anthony*, 954 F.2d at 293-94.

14

"degenerative disc disease, heart murmur and diabetes."[45]  ALJ Vanderhoof's decision reiterates the governing regulation that "if a 'severe' impairment exists, *all medically determinable impairments* must be considered in the remaining steps of the sequential analysis (20 C.F.R §§ 404.1523 and 416.923)."[46]   However, it is important to note that Vanderhoof did not mention either in his discussion or in his findings at Step 2 that, in addition to degenerative disc disease, plaintiff's impairments include status post *multi-level* lumbar interbody fusion, with two cages, screws and artificial bone, morbid obesity, peripheral edema, micro albuminuria, diabetic nephropathy and renal insufficiency.

The ALJ's decision only mentions  "a lumbar fusion," as opposed to a posterior lumbar interbody fusion at two separate levels.   The ALJ makes no mention of a number of other medically determined impairments which may or may not significantly impact plaintiff's ability to perform work-related functions, including obesity, micro albuminuria, diabetic nephropathy, peripheral edema, renal insufficiency and status post *multi-level* lumbar fusion.  Without any discussion or mention of the aforesaid "other impairments,"  this Court can only conclude that the ALJ determined *sub silentio* that all of these conditions resulted in only a slight abnormality having minimal effect on plaintiff's ability to work.  However, there is no discussion of medical records upon which this assessment is based. The ALJ reached the aforesaid conclusion after a selective discussion of the plaintiff's medical records.

The non-severity finding is contradicted by substantial medical evidence in the administrative record, much of which was not discussed. Plaintiff produced both treating

---

[45]ALJ Vanderhoof's Decision dated July 16, 2004 [Adm. Rec. 15, 17].

[46]*Id.* [Adm. Rec. 14].

physicians' records and two functional capacity evaluations, which reveal that these physical impairments may have more than minimal effect on his ability to work or function and should have been considered by the ALJ. While not bound by these physicians' opinions, ALJ Vanderhoof was obliged to consider them and could reject them only for good cause.[47]  The ALJ cites no contrary *medical* evidence and the reasons articulated by the Commissioner for disregarding these plaintiff's treating physician's assessments/diagnoses do not constitute good cause.

The only support for the ALJ's conclusion of non-severity of the plaintiff's other physical impairments is the ALJ's finding that the claimant's statements regarding his limitations were not credible.  The ALJ noted that there was some inconsistency in plaintiff's statement that he can sit for 20 minutes and the fact that he reads for an hour and watches television all day. Indeed, the plaintiff testified that he had to periodically change his position alternating between standing, sitting, and lying down in various positions to ease his pain.  The ALJ further observed that none of plaintiff's physicians directed that he use a cane.

However, it is equally clear from this court's review of the administrative record that

---

[47]An ALJ is obliged to consider all the evidence. 20 C.F.R. § 404.1520 (2002); Soc. Sec. Ruling 96-7p (1996).  Decisions must be based on the record as a whole; the ALJ is not free to pick and choose only the evidence supporting a particular position. *See Loza*, 219 F.3d at 393; *Switzer v. Heckler*, 742 F.2d 382, 385-86 (5th Cir.1984).  Moreover opinions of treating physician must generally be accorded controlling weight unless for good cause shown an ALJ rejects or assigns less weight to the treating physician's opinion. Good cause may exist when the physician's statements are conclusory and brief; otherwise unsupported by the evidence; when the treating physician is not credible because he is "leaning over backwards to support the application for disability benefits"; or when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.2001) (*citing Greenspan*, 38 F.3d at 237); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.2000).

16

none of the plaintiff's physicians suggested that the plaintiff attempt walking on a regular basis without the assistance of a cane. It is also documented in the medical record that plaintiff experienced numbness in both feet and had poor balance, no Achilles reflex bilaterally and ambulated with a mildly ataxic gait[48] with the use of a cane.[49]   Additionally, when he first presented to ISR physical therapy one week post-hearing, the FCE was aborted until Folse could be evaluated by a cardiologist for a number of reasons, to wit:

    1). On auscultation he has a cardiac arrythmia [abnormal cardiac rhythm].
    2). He is morbidly obese.
    3). He has pitting edema[50] of the lower extremities.
    4). He has type II diabetes.
    5). He has documented hypercholesterolemia.[51]

It is clear from PT/OCS Bardarson's June 4, 2004 report that all of the aforesaid documented conditions, only two of which were mentioned by the ALJ, may well have an effect on the plaintiff's ability to perform work related functions.

      It is noteworthy that plaintiff's treating neurosurgeon (Dr. Pribil) did not dispute that Folse's functional capacity was in the *sedentary* range with additional restrictions. Dr. Pribil

---

    [48]An "ataxic gait" means a clumsy and uncertain gait in which the legs are far apart, and when taking a step, the leg is lifted abruptly and too high and then is brought down so that the whole sole of the foot strikes the ground at once. *See Blakiston's* Gould Medical Dictionary at p. 130.

    [49]*See* FCE [Adm. Rec. 302].

    [50]Pitting edema is defined as edema of such a degree that the skin can be temporarily indented by the pressure of a finger. *See Blakiston's* Gould Medical Dictionary at p.1055.

    [51]*See* Report of Trevor Bardarson, PT, OCS dated June 4, 3004 [Rec. Doc. No. 272]; Report of Dr. Adolfo Cuadra dated  May 6,2002  (noting 2-3+ pitting edema in the lower extremities) [Adm. Rec. 140].

further opined that the plaintiff "cannot walk in a sustained fashion"[52] and that he "had reached

MMI (*i.e.*, that his condition would not improve)."[53]  Dr. Pribil concluded that:

> [Plaintiff] had a reversible kidney shutdown at the time of the surgery and
> subsequently has had some blockage.  He is diabetic, morbidly obese and
> deconditioned....  In relation to the spinal problems he has a 25% impairment
> rating of the body as a whole.[54]

SSR 00-3P specifically states, "we will not make assumptions about the severity or

functional effects of obesity combined with other impairments. Obesity in combination with

another impairment may or may not increase the severity or functional limitations of the other

impairment. We will evaluate each case based on the information in the case record." *Id.*  Folse

met his burden of showing how his obesity adversely affected his other conditions.  Medical

records specifically indicate that "weight loss [would] get [his blood] sugar better controlled."[55]

In this case, the ALJ finding at step two of the sequential analysis was determined under

the incorrect legal standard. The ALJ did not refer to *Stone* in his opinion, nor did he set forth the

standard as the Fifth Circuit construed it in *Stone*. The ALJ's rationale as expressed in his

decision does not meet the requirement that, in order to assess severity when a claimant alleges

disability from more than one impairment, as plaintiff has done here, the ALJ is required to

---

[52]The regulations define light work as follows: "Light work involves lifting no more than
20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even
though the weight lifted may be very little, a job is in this category when *it requires a good deal
of walking* or standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls. To be considered capable of performing a full or wide range of
light work, *you must have the ability to do substantially all of these activities*."

[53]*See* Dr. Pribil's Report dated September 2004 [Adm. Rec. 274].

[54]*Id.*

[55]St. Anne General Hospital Records dated July 26, 2004 [Adm. Rec. 287].

consider the cumulative effect of all of the impairments. In that regard, the social security regulations provide that, in determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the Act, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. [56] Again, the ALJ did not consider the cumulative impact of plaintiff's physical impairments, which are discussed in the plaintiff's medical records, and based the step 2 and 3 findings upon a selective discussion of those records.

By relying exclusively on selective portions of the medical record and on selective portions of plaintiff's hearing testimony, and not on the record as a whole, the ALJ did not properly apply the standard for determining the severity of plaintiff's impairments as provided in *Stone*.[57] The ALJ's error in not properly following the *Stone* decision is compounded by his failure to consider, or even mention, several of the diagnoses of plaintiff's treating physicians/ These opinions were relevant to the ALJ's proper assessment of the severity of plaintiff's physical impairments. The ALJ did not base his decision on the record as a whole, given his failure to discuss, or even mention, portions of the medical evidence available at the time of the hearing. Given the omission of pertinent parts of the record in his decision, it cannot be said that the facts of plaintiff's claim were fully and fairly developed. Accordingly, the ALJ's decision failed to comport with the applicable legal standards when he failed to properly weigh the credibility of

---

[56]*Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000) (Emphasis added); *Anthony*, 954 F.2d at 293.

[57]*Stone*, 752 F.2d at 1105.

19

the omitted records, consider them in conjunction with the rest of the relevant medical evidence made part of plaintiff's case, and then perform a comparison of same.[58]

Because the ALJ erred by not properly addressing the substantial objective evidence of record, and by not applying the correct legal standard in assessing the severity of all of plaintiff's claimed impairments, his decision should be reversed.

### B. Residual Functional Capacity (RFC)

The Social Security regulations and rulings provide guidance for the ALJ in determining a claimant's RFC.  See 20 C.F.R. §§ 404.1545, § 416.945; and SSR 96-8p. Specifically, the regulations provide that an RFC is "an assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(d).   In addition, SSR 96-8p provides that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure the file contains sufficient evidence to assess the RFC." SSR 96-8p. The RFC assessment must always consider and address *all* medical source opinions.  *Id.*  SSR 96-8p states that an ALJ's assessment of claimant's RFC must contain a "thorough discussion of the objective medical evidence," as well as discuss how, "any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*   Social Security Ruling 96-8p provides that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." "The RFC assessment is a function-by- function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.*

---

[58]20 C.F.R. § 416.927 & SSR 96-2p.

(*quoting* 61 Fed.Reg. 34474-01 (July 2, 1996)).   Therefore, inherent in every residual functional

capacity assessment is a finding that the claimant can perform work on a regular and continuing

basis, and thus can maintain employment.  *See* 20 C.F.R. S 404.1545(b); *see also Dunbar v.*

*Barnhart*, 223 F. Supp. 2d 795, 802 (W. D. Tex.2002).  The Fifth Circuit considers these

regulations and rulings to be relevant to any decision.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th

Cir.2001).[59]

The ALJ failed to comply with the applicable regulations discussed above.  It does not

appear that plaintiff's evidence of these other physical impairments/limitations was so slight as to

warrant a presumption of non-disability without a full evaluation of all vocational factors,

including an evaluation of whether the combined effects of all physical impairments and their

attendant limitations (exertional and non-exertional), make the impairments "severe."[60]

---

[59]*See also Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (holding that the ALJ
erred in failing to determine whether Watson was capable not only of obtaining employment, but
also maintaining it).  The Fifth Circuit's decision in *Watson* required the ALJ to make a finding
as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the
exertional, as opposed to non-exertional (*e.g.*, mental illness) nature of the claimant's alleged
disability.  The rule of *Watson*, necessitating a separate finding of whether the claimant is
capable of maintaining employment, is implicated in a situation in which, by its nature, the
claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. *See
also Frank v. Barnhart,* 326 F.3d 618 (5th Cir. 2003) (noting, on petition for rehearing, that
usually the issue of whether the claimant can maintain employment for a significant period of
time is subsumed in the analysis regarding the claimant's ability to obtain employment but
recognizing, nevertheless, that an occasion may arise, as in *Watson*, where the medical
impairment, and the symptoms thereof, are of such a nature that separate consideration of
whether the claimant is capable of maintaining employment is required).

[60]Because the ALJ's RFC analysis did not take into consideration plaintiff's physical
impairments/ limitations and based on the ALJ unsupported finding at step two that these
limitations were not severe (albeit *sub silentio*), the RFC assessment must be revisited.

It is well-recognized that an ALJ has the responsibility to " 'develop the facts fully and fairly relating to the applicant's claim,'" and, if he does not meet this responsibility, his decision is not "'substantially justified.'"[61]  Addressing the Commissioner's contention that the ALJ was not required to consider all impairments unless they were specifically alleged in the plaintiff's application for disability benefits, the applicable regulations do not support the Commissioner's argument.   20 C.F.R. 404.1512 provides that "[w]e will consider only impairment(s) you say you have *or about which we receive evidence. Id.* (emphasis added).

Here, because the ALJ failed to properly assess the severity of plaintiff's non-exertional impairments  according to the applicable legal standards, his assessment of plaintiff's RFC became skewed.[62]  Accordingly, due to the errors in failing to consider the record as a whole, the Court finds the determination of plaintiff's RFC, by applying the Medical-Vocational Guidelines to find Folse not disabled at Step , was erroneous and the determination not supported by substantial evidence.[63]  The medical records considered by the Appeals Council reflect that the plaintiff was limited to occasional standing, occasional walking, rare stair climbing, no step ladder climbing and no balancing.  Additionally, the record reflects that the plaintiff was totally

---

[61]*Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir.2001) (*quoting Ripley*, 67 F.3d at 557); *see also Newton v. Apfel*, 209 F.3d 448 (5th Cir.2000).

[62]*See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520 and 404.1561.

[63]Fifth Circuit precedent provides that an ALL's application of the grid rules in order to determine whether Social Security disability benefits  and whether claimant is capable of performing other work is *only* appropriate "when it is established that claimant suffers only from exertional impairments, or that claimant's nonexertional impairments do not sufficiently affect his RFC." *Watson v. Barnhart,* 288 F.3d 212, 216 (5th Cir. 2002) (*quoting Crowley v. Apfel*, 197 F.3d 194, 1999 (5th Cir. 1999)). *See also* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520 and 404.1561.

restricted from working at unprotected heights, moderately restricted form whole body vibration and hot weather and mildly restricted from working with moving machinery and/or in dust, fumes and gases.

The Court is also not persuaded by the Commissioner's post-hoc argument dismissing the September 2004 FCE results as unrelated to the time period at issue. There is no evidence upon which to base the argument that the plaintiff's condition declined over the brief period during which the plaintiff was being evaluated by a cardiologist (*i.e.*, from June, 2004 to August, 2004) prior to the completion of his FCE. Indeed, Dr. Pribil opined that the plaintiff had reached maximum medical improvement as of September, 2004[64] and the Appeals Council concluded that the "evidence continues to show general improvement after the claimant's lumbar fusion surgery."[65]   As of September, 2004, it was plaintiff's treating physician's opinion that plaintiff "cannot walk in a sustained fashion,"[66] which would preclude light level work.  In light of the foregoing, it would not be reasonable to assume that the plaintiff was capable of walking in a sustained fashioned consistent with the requirements of light work at any time prior to the point of maximum medical improvement.

The statute provides that a claimant may obtain review of "any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g).  The Fifth Circuit has recently determined that the final decision of the Commissioner of Social Security includes the Appeals Council's denial of a request for review  and that the evidence submitted for the first time to the Appeals

---

[64]*See* Dr. Pribil's Report dated September 2004 [Adm. Rec. 274].

[65]Notice of Appeals Council Action dated November 19, 2004 [Adm. Rec. 5].

[66]*See* Dr. Pribil's Report dated September 2004 [Adm. Rec. 274].

Council is part of the record on appeal.[67]   Considering the new evidence that Folse submitted to the Appeals Council, the ALJ's application of the GRIDS to determine RFC constitutes reversible error.[68]

The Court remains mindful that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues, including the severity of all of the plaintiff's physical impairments.

## RECOMMENDATION

Based upon the foregoing discussion of the issues, evidence and the law,  and because plaintiff's substantial evidence points of error should be sustained, IT IS RECOMMENDED that the Commissioner's decision be VACATED and the case REMANDED for further proceedings consistent with this report and findings.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such

---

[67]*See Higginbotham v. Barnhart*, 405 F.3d 332, 339 (5th Cir. 2005) (holding that because the Appeals Council considered and evaluated post-decision evidence, that evidence constitutes evidence upon which the Commissioner's decision is based).

[68]The Court here notes that it is error to rely on the Medical-Vocational Guidelines where a claimant suffers from significant non-exertional impairments. *See Loza*, 219 F.3d 378, 398 (5 th Cir.2000); *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir.1999).

party, except upon grounds of plain error or manifest injustice, from attacking on appeal the factual findings and legal conclusions adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir.1996) (*en banc*).

New Orleans, Louisiana, this 17 day of March, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**